# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2839-18T2

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

D.P.,

     Defendant,

and

M.S.,

     Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF A.M.P.,

     a Minor.

_____

Submitted January 15, 2020 – Decided February 5, 2020

Before Judges Koblitz, Whipple and Mawla.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Cape May County, Docket No. FG-05-0006-18.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Phuong Vinh Dao, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Sookie Bae, Assistant Attorney General, of counsel; Iraisa C. Orihuela-Reilly, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Nancy P. Fratz, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant father M.S. appeals from the February 13, 2019 judgment terminating his parental rights to A.P., his child with D.P. The Division of Child Protection and Permanency (Division) became involved with A.P. when she was just two days old. Defendant mother, D.P., is not a party to this appeal. We affirm for the reasons explained by Judge M. Susan Sheppard in her written decision issued the same day.

Defendant raises the following issues on appeal:

POINT I: THE TRIAL COURT ERRED WHEN IT FOUND THAT M.S.'S PARENTAL RELATIONSHIP PRESENTED A SUBSTANTIAL RISK OF HARM TO A.P.

POINT II: THE TRIAL COURT ERRED WHEN IT FOUND THAT M.S. WAS UNABLE OR UNWILLING TO MITIGATE THE HARM THAT MIGHT RESULT FROM REUNIFICATION.

POINT III: THE TRIAL COURT ERRED IN FINDING THAT [THE DIVISION] PROVIDED REASONABLE SERVICES UNDER PRONG THREE.

POINT IV: THE TRIAL COURT ERRED WHEN IT FOUND THAT A.P. WOULD BE HARMED FROM CONTINUED CONTACT WITH HER FATHER.

A.P. was placed with her foster parents by the Division when she was just two days old, after D.P. tested positive for marijuana and the Division executed an emergency removal. D.P. was unable to care for A.P. and there was no father listed on the birth certificate, although M.S. believed he was the father and indicated he wanted to care for A.P. After it was determined M.S. was the biological father, he was allowed supervised-only visits with A.P. based on his prior Division involvement and a domestic violence arrest, as well as the recommendation by Dr. Gregory Gambone that M.S. was currently unable to parent. Dr. Gambone recommended unsupervised visits be contingent on the completion of drug counseling, anger management, and parenting skills services, among other things. At the time, M.S. lived with his mother, who had

3                                                                A-2839-18T2

prior Division involvement, and two other family members were ruled out as placements.

Our review of the record informs us that while M.S. did have some positive visits and interactions with A.P., where it was apparent he loved her and wanted to parent her, over the course of two years he would not fully comply with services, was belligerent with Division workers and service providers, refused to give the Division proof of employment, failed to perform random drug screens, failed to confirm multiple visits ahead of time as instructed, and was unable to establish a safe and stable home for A.P., which prevented him from progressing to unsupervised visits. Although the trial judge gave M.S. a ninety-day extension before trial to show the court he could comply with services, M.S. instead was arrested on burglary and aggravated assault charges, and once out on bail refused to comply with court orders directing him to disclose to the Division where he was living.

In the meantime, A.P. developed a strong and nurturing bond with her foster parents, who expressed their wish to adopt her, and who put off a mission trip to Mexico until they could either adopt A.P. or until she was placed back with her parents. The foster parents also indicated they wanted to keep in touch with M.S. were they to adopt A.P., and they kept in contact with M.S.'s aunt so

A.P. would know her biological family. The record reflects that A.P. thrived in the home environment of her foster parents.

The matter proceeded to a guardianship trial on December 3, 2018. At the time of trial, M.S. had been indicted for the June burglary and aggravated assault charges. A.P. was now two years and three months old and had been in the home of her foster parents for all but the first two days of her life. M.S. did not appear on the first day of trial, even though he was informed of the date and time.

The Division called Sean O'Reilly, the permanency caseworker, and Dr. James Loving, an expert in clinical and forensic psychology. The Law Guardian called Dr. Jo Anne Gonzalez, an expert in clinical psychology and bonding.

Dr. Loving opined while M.S. appeared loving toward A.P. and had a bond with her, the bond was similar to that of an extended family member, and that any risk of harm from severing that bond would be negligible and could be easily mitigated by the foster parents. A.P.'s bond with her foster parents, however, was very strong, as they were the only caretakers she had known since she was two days old, and Dr. Loving and Dr. Gonzalez, the law guardian's expert, both agreed there was a high risk that severing that bond would cause A.P. severe psychological and emotional harm.

Based on the Division records, expert reports, and testimony by the experts and the Division worker, the family court found the Division proved all four prongs of the best interest test under N.J.S.A. 30:4C-15.1(a) and terminated M.S.'s parental rights. While M.S. argues evidence that termination was not in A.P.'s best interest was ignored, which necessitates a reversal of the order terminating his parental rights to A.P., there is substantial, credible evidence to support the family court's findings, which are set out in Judge Sheppard's thorough and thoughtful opinion.

Our review of that decision is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). We defer to the judge's expertise as a Family Part judge, id. at 412-13, and we are bound by her factual findings so long as they are supported by sufficient credible evidence, N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (citing In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)). We conclude the factual findings of Judge Sheppard are fully supported by the record and the legal conclusions drawn therefrom are unassailable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2839-18T2